IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 12-CV-3362-WYD-MJW

BRANDON ALBERS, et al.,

Plaintiffs,

v.

THE BOARD OF COUNTY COMMISSIONERS OF JEFFERSON COUNTY, COLORADO, and TED MINK, in his official capacity as Sheriff of Jefferson County,

Defendants.

### DEFENDANTS' MOTION TO DISMISS PURSUANT TO
### FED. R. CIV. P. 12(b)(6)

Defendants Board of County Commissioners of Jefferson County, Colorado ("BCC") and Ted Mink, in his official capacity as Sheriff of Jefferson County ("Sheriff"), by and through counsel, the Jefferson County Attorney's Office and Assistant County Attorney Patricia W. Gilbert, respectfully submit this Motion to Dismiss Plaintiffs' sole FLSA collective action claim against them in their Complaint.[1]  In support of this Motion to Dismiss, Defendants state as follows:

### I.      OVERVIEW

Plaintiffs are current and former Jefferson County Sheriff's Office employees who received wages and overtime for the past three years and never complained that their wage rates

---

[1] For purposes of this Motion, the term "Complaint" shall refer to Plaintiffs' Third Amended Complaint and Jury Demand (docket no. 31-1, tendered June 26, 2013).

were wrong.  After accepting paychecks for three years, they now sue the BCC and the Sheriff seeking millions of dollars of back pay based on their silent alleged reliance on a document posted annually entitled "Jefferson County Sheriff's Office Salary Schedules" ("Salary Schedules"), which for the past two and a half years states specifically at the top of each page "<u>Implementation continent on budgetary funding</u>."  The Salary Schedules reflect pay increases for most positions and would require millions of taxpayer dollars annually to implement[2].

Plaintiffs assert one collective action claim that Defendants violated the overtime provision of the Fair Labor Standards Act ("FLSA") because Defendants calculated overtime using the wage rates set forth in Plaintiffs' individual paychecks instead of the rates for their positions listed in the Salary Schedules.  Plaintiffs' Complaint fails to state a plausible FLSA claim for three independent reasons.  First, Plaintiffs have failed to allege facts sufficient to establish that their regular rates of pay were not rates they were actually paid, but instead the rates set forth in the Salary Schedules.  Second, any alleged agreement or promise to pay the wages set forth in the Salary Schedules is unenforceable because, according to Plaintiffs' allegations, the BCC did not approve the Salary Schedules as required by Colo. Rev. Stat. § 30-2-206(1).  Finally, any alleged promise to pay is unenforceable because the facts alleged, even if true, do not establish that the BCC approved budgetary funding to implement the Salary Schedules as required by Colorado law.  Plaintiffs have not alleged that the BCC increased the Sheriff's budget for salaries in an amount sufficient to fund the Salary Schedules in any year.

---

[2]  The Salary Schedules were created after completion of the County-wide compensation study, which included a market survey.  Plaintiffs' counsel has represented to the BCC that it would cost approximately $4,250,000 to pay for the salary increases for all employees.  While this number is not in Plaintiffs' Complaint, an approximate cost of $2,800,000 can be roughly estimated using the Salary Schedules attached as Exhibit 2 to Plaintiffs' Complaint, as described in section II of this brief.

2

Instead, Plaintiffs allege that the BCC somehow approved millions of dollars of salary increases because the Sheriff had authority to transfer funds in his budget from unspecified "other activities" to salaries. Critically missing is any allegation that the Sheriff's budget had millions of dollars of excess funding for "other activities" that could be cut and transferred to salaries. There are also no allegations the Sheriff understood that he could make such transfers and intended to do or actually did so. The facts alleged simply do not establish that the BCC approved sufficient funding to implement the Salary Schedules. Plaintiffs' Complaint fails to allege an FLSA violation, and therefore, Plaintiffs' Complaint should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6).

## II.  PROCEDURAL AND FACTUAL BACKGROUND

Plaintiffs originally filed their Complaint on December 28, 2012 and it was amended twice. On March 15, 2013, Defendants moved to dismiss Plaintiffs' Complaint. The parties agreed to limited discovery on the issues raised in the motion to dismiss and Plaintiffs' counsel took the depositions of Sheriff Mink and County Administrator Ralph Schell. Based on that information, Plaintiffs filed a Third Amended Complaint, which alleges one FLSA collective action claim. Defendants again move to dismiss because Plaintiffs have not alleged sufficient facts to state a plausible claim that Defendants violated the FLSA.

For purposes of this motion, Defendants accept the factual allegations of Plaintiffs' Complaint. Plaintiffs allege that they are current or former employees of both the Sheriff and BCC. Compl. ¶¶ 5, 8, 10, 19. The alleged class for this collective action is all non-exempt employees of the Sheriff's Office. Compl. ¶ 10.

3

The Sheriff is an elected Jefferson County official, who provides law enforcement services for Jefferson County. The Sheriff's Office has approximately 800 employees, mostly sworn deputy sheriffs. Compl. ¶ 18.

Jefferson County is a governmental entity governed by a three-member board of county commissioners. Compl. ¶ 6. The County's powers are exercised by the BCC at public meetings. Colo. Rev. Stat. §§ 30-11-103; 30-11-107. The BCC holds annual public budget hearings. Colo. Rev. Stat. § 29-1-108(1). Prior to adoption, the County's proposed budget is available for inspection and electors may file objections to the budget prior to adoption. Colo. Rev. Stat. § 29-1-106(1). Each County spending agency, including the Sheriff's Office, provides the BCC with a recommended budget for its operations. Colo. Rev. Stat. §§ 29-1-105; 30-11-107(2)(a). The BCC has exclusive power to adopt the annual budget for all county operations, including the Sheriff's Office. Colo. Rev. Stat. § 30-11-107(2)(a). The County's budget is adopted by BCC resolution before the budget year and the BCC's adopted budgets are public record. Compl. ¶ 23.

Plaintiffs allege that the Sheriff sets the salaries for employees each year in documents titled "Jefferson County Sheriff's Office Salary Schedule," which are attached as Exhibit 2 to Plaintiffs' Complaint. Compl. ¶ 24 & Ex. 2. Plaintiffs were not paid according to the Salary Schedules and they accepted paychecks at wage rates different from the wage rates contained in the Salary Schedules. Compl. ¶ 29. Plaintiffs allege that the "BCC did not review, much less approve or deny, the specific salary schedules attached in Exhibit 2 prior to issuing the 2010, 2011 and 2012 budgets." Compl. ¶ 25. There is no allegation that the BCC approved the Salary Schedules at any time.

4

The Salary Schedules do not list employee names, but only position titles and steps. Compl. ¶ 24 & Ex. 2. The 2011 and 2012 Salary Schedules list the "Old Range" as a yearly salary underneath the yearly salary for most positions and steps. The 2011 and 2012 Salary Schedules generally show increases for most positions and steps, with some increases as high as $19,780 per year (Criminalist Step 12 for 2012). Compl. Ex. 2 at 9 of the 2012 Salary Schedule. Each page of the 2011 and 2012 Salary Schedules contains underlined language at the top of each page: "Implementation contingent on budgetary funding." Compl. ¶ 24 & Ex. 2. For 2012, the average increase listed for the deputy sheriff position was $3,350 per year. Using an estimated average increase of $3,500 per year multiplied by 800 employees, the estimated funds necessary to implement the Salary Schedules is $2,800,000 annually.[3] There is no allegation that the BCC increased the Sheriff's budget for salaries and wages by the several million dollars needed to fund the Salary Schedules.

In their Complaint, Plaintiffs focus on the appropriations in the Sheriff's budget. Plaintiffs allege that the "vast majority" of the BCC's fund appropriations in the Sheriff's budget were to the General Fund or Patrol Fund. Comp. ¶ 27. Plaintiffs allege that between those two funds, there was sufficient funding to pay Plaintiffs in accordance with the Salary Schedules. Compl. ¶ 27. Plaintiffs allege that the BCC adopted policies "permitting the Sheriff to transfer funds from other activities to pay for salaries." Compl. ¶ 28. Plaintiffs do not allege that the Sheriff understood that he had the authority to transfer funds in this manner.

---

[3] The average is rounded slightly upward because numerous other positions reflect increases significantly above the average. Plaintiffs' counsel has estimated a significantly higher number, $4,250,000 annually to pay employees according to the Salary Schedules.

5

The Sheriff's annual budgets contain the following categories of operating expenditures: wages and benefits, supplies, services & charges, and intergovernmental. There is no allegation that the Sheriff's budget contained excess funding in any category that could be cut and transferred to wages. There is no allegation that the Sheriff could cut expenses for "other activities" that were funded in the approved budget.

Plaintiffs allege generally that the Salary Schedules were posted "for constant and continuous viewing" and were published electronically. Compl. ¶ 24. During the three relevant years, Plaintiffs continually received and accepted allegedly incorrect bimonthly paychecks. Both Plaintiffs' pay statements and W-2 forms reflect wage rates different from those set forth in the Salary Schedules. There is no allegation that any Plaintiff ever protested their paychecks or otherwise notified Defendants that they were not being paid the correct rate of pay.

Plaintiffs assert one collective action claim that Defendants violated the FLSA by not paying them the wage rates for their positions listed in the Salary Schedules.

## III.   ARGUMENT

To survive a Motion to Dismiss, the burden is on Plaintiffs to allege sufficient facts to state a claim for relief that is plausible on its face. Ashcroft v. Iqbal, 556 U.S. 662, 129 S. Ct. 1937, 1949 (2009); Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 127 S. Ct. 1955, 1974 (2007). Plaintiffs' Complaint fails to state a plausible FLSA claim.

### A.   Plaintiffs Have Not Alleged Sufficient Facts to Establish that their Regular Rates of Pay Were the Rates Set Forth in the Salary Schedules.

Plaintiffs assert one claim for violation of the FLSA, citing 29 U.S.C. §§ 206 and 207. Section 206 is the minimum wage provision. Plaintiffs have not alleged that they were paid below minimum wage. Section 207 is the overtime provision, which requires that overtime

6

hours be compensated "at a rate not less than one and one-half times the regular rate at which [the employee] is employed." 29 U.S.C. § 207(a)(1).  The definition of regular rates states:  "the 'regular rate' at which an employee is employed shall be deemed to include all remuneration for employment paid to, or on behalf of, the employee, . . . ."  29 U.S.C. § 207 (e).  The regular rate is "the hourly rate actually paid for the normal, non-overtime workweek."  Chavez v. City of Albuquerque, 630 F.3d 1300, 1304-5 (10th Cir. 2011), citing Bay Ridge Operating Co. v. Aaron, 334 U.S. 446, 68 S. Ct. 1186 (1948) ("Every contract of employment, written or oral, explicitly or implicitly includes a regular rate of pay for the person employed.").

According to the statutory definition, Plaintiffs' "regular rate" is the rate *actually paid to* Plaintiffs.  29 U.S.C. § 207(e).  Plaintiffs are at-will employees.  See Colo. Rev. Stat. § 30-10-506.  Plaintiffs accepted employment and were paid wages and overtime at the rates set forth in their pay statements ("Actual Wage Rate").  Although Plaintiffs argue that they were promised the rates set forth in the Salary Schedule ("Salary Schedule Rate"), they were never paid those rates.  Plaintiffs' Actual Wage Rate was, by statutory definition, their "regular rate."  Consequently, Defendants did not violate the FLSA when they calculated overtime using the Actual Wage Rate.

Defendants recognize that courts have allowed overtime claims in cases where employees allege that they were entitled to a certain regular rate based on an alleged mutual agreement, such as a collective bargaining agreement.  See Chavez v. City of Albuquerque, 630 F.3d at 1304.  However, Defendants have not found any Supreme Court or Tenth Circuit decision that recognizes an overtime claim without any alleged mutual agreement, based on what is essentially an equitable, not legal, promissory estoppel theory.  Defendants have not found any case where a

7

court has recognized an FLSA claim based on the posting of salary schedules or similar documents. Defendants found one Southern District of Indiana case where an employee alleged that she was promised a raise and asserted an FLSA claim alleging that the promised raise was her "regular rate." Anderson v. Northeast Otolaryngology, P.C., No. 106CV-0037, 2006 WL 3487333 (S.D. Ind. Dec. 1, 2006). However, that case, unlike this one, involved a specific oral promise directed to the individual employee. The definition of regular rate should not be impermissibly stretched to include mere promises to pay, as opposed to an actual mutual agreement to pay. Because the facts alleged do not establish that Plaintiffs entered into an agreement to continue their employment in exchange for the Sheriff's promise to pay the Salary Schedule Rates, Plaintiffs have failed to allege sufficient facts to establish that their regular rates were the Salary Schedule Rates.

Even if the Court were to recognize an FLSA overtime claim based on a mere promise to pay, according to the Anderson case, such a claim is legally insufficient if the employee continued employment at a different rate without protest. Id. Relying on the Supreme Court precedent in Williams v. Jacksonville Terminal Co., 315 U.S. 386 (1942), the Anderson court held that an employee's continued employment constituted an agreement to be paid at the actual rate received, rather than the allegedly promised rate. Here, like Indiana law, Colorado law recognizes modification of a contract based on the conduct of the parties. See George v. Ute Water Conservancy Dist., 950 P.2d 1195, 1198 (Colo. Ct. App. 1997). According to Plaintiffs' Complaint, they continued employment and accepted wages at the Actual Wage Rate for three years and there is no allegation that they ever complained or protested that their wage rate was incorrect. These allegations establish an employment agreement to be paid at the Actual Wage

Rate, not the Salary Schedule Rate.  Holb v. City of Beaufort, Nos. 91-2086, 92-1427, 1993 WL 219806, at *5 (10th Cir. June 22, 1993) ("an employee's continuous employment is evidence of an implied agreement with the pay system of the employer."); Johnson v. City of Columbia, S.C., 949 F.2d 127, 131 (4th Cir. 1991) ("if the employee did not protest and continued to work and receive paychecks, the courts have found that an implied agreement did arise between the parties.").  Consequently, Plaintiffs have failed to state a plausible claim that Defendants violated the FLSA's overtime provision.

Based on the allegations of Plaintiffs' Complaint, any alleged promise to pay was contingent upon the Sheriff obtaining sufficient budgetary funding.  The FLSA's default statute of limitations is two years.  See 29 U.S.C. § 255(a).  During that period, the 2011 and 2012 Salary Schedules contained the language of "Implementation contingent on budgetary funding" underlined at the top of each page.  Compl. Ex. 2.  This language would have been unnecessary if the BCC had actually approved sufficient budgetary funding.  Similarly, if the Sheriff believed that he had sufficient funds because he could transfer funds to salaries from other expense categories, this language would be unnecessary.  The plain meaning of the language is that the Schedules have not, and will not, be implemented until the Sheriff's budget contains sufficient funding.  Plaintiffs have not alleged sufficient facts to establish that the Sheriff obtained sufficient budgetary funding, as discussed in more detail in section III.C, or that the Sheriff actually implemented the Salary Schedules.  Because the alleged promise to pay was contingent upon an event that never occurred, Plaintiffs' regular rate of pay never changed.  Therefore, Plaintiffs have failed to allege an FLSA violation for the two-year statute of limitations period.

**B.     The Salary Schedule Rates Are Unenforceable Because the BCC Did Not Approve the Salaries As Required by C.R.S. § 30-2-106(1).**

9

Even if this Court accepts Plaintiffs' novel theory that the posting of the Salary Schedules created an agreement to pay, that agreement is governed by Colorado law. See Anderson v. Northeast Otolaryngology, P.C., 2006 WL 3487333, at *3 (applying Indiana law with respect to an FLSA claim). In Colorado, "a government entity's power to enter into contractual obligations is circumscribed by statute and ordinances." Kirkland v. St. Vrain Valley Sch. Dist. No. Re-1J, 464 F.3d 1182, 1190 (10th Cir. 2006). Such restrictions are incorporated into any contract the government entity makes. Id. See Keeling v. City of Grand Junction, 689 P.2d 679, 680 (Colo. App. 1984). Similarly, promises are not enforceable if not authorized by law. Seeley v. Board of County Comm'rs for La Plata County, 791 P.2d 696, 701 (Colo. 1990) ("A party cannot state a claim for relief under a theory of estoppel against a state or local government entity on the basis of an unauthorized action or promise.")

Colo. Rev. Stat. § 30-2-106(1) provides that deputy sheriff salaries "shall be fixed by the sheriff with the approval of the board of county commissioners." This statute is separate from the statute granting the BCC exclusive power to adopt the operating budgets for County elected officials. See Colo. Rev. Stat. § 30-11-107(2)(a). Plaintiffs' Complaint alleges that the Sheriff sets salaries "in the form of a document entitled 'Jefferson County Sheriff's Office Salary Schedule.'" Compl. ¶ 24. Plaintiffs then allege: "The BCC did not review, much less approve or deny, the specific salary schedules attached in Exhibit 2 prior to issuing the 2010, 2011, and 2012 budgets." Compl. ¶ 25. There is no allegation that the BCC approved the Salary Schedules at any time.

Because the salaries set forth in the Salary Schedules were never approved by the BCC, those salaries are contrary to Colo. Rev. Stat. § 30-2-106(1) and unenforceable. While

10

Defendants acknowledge that the statute only specifies deputies' salaries, and not all salaries, Colorado courts have recognized that BCC approval is required for all Sheriff's salaries. See Johnson v. Board of County Comm'rs of Eagle County, 676 P.2d 1263, 1265 (Colo. App. 1984) ("Whatever representations the sheriff made thereafter to his deputies and clerks regarding cash compensation or overtime were made on his own without the knowledge or approval of the board and, thus, are not binding on the county or the board." ). Because the BCC did not approve the salaries set forth in the Salary Schedules, they are unenforceable as a matter of law and cannot lawfully be used as Plaintiffs' regular rate.

**C.   The Salary Schedule Rates Are Unenforceable Because Plaintiffs Have Failed To Allege Sufficient Facts to Establish that the BCC Approved Sufficient Budgetary Funding.**

Under Colorado law, the BCC has exclusive power over budget and funding decisions involving all county operations, including the Sheriff's Office. Colo. Rev. Stat. § 30-11-107(2)(a); James v. Fenske, No. 10-cv-02591-WJM-CBS, 2012 WL 694351, at *1 (D. Colo. Mar. 1, 2012). The BCC's budget determinations are binding on the Sheriff. Id. Colo. Rev. Stat. § 30-11-107(2)(a) provides:

> [T]he board of county commissioners of each county has exclusive power to adopt the annual budget for the operation of the county government, including all offices, departments, boards, commissions, other spending agencies of the county government, and other agencies which are funded in whole or in part by county appropriations. All such entities shall make appropriate budget recommendations each year to the board of county commissioners for the operation of their respective offices; but the final budget determination of each board of county commissioners shall be binding upon each of the respective offices, departments, boards, commissions, other spending agencies of the county government, and other agencies which are funded in whole or in part by county appropriations.

In Wadlow v. Kanaly, 182 Colo. 115, 511 P.2d 484, 487 (Colo. 1973), the Court states: "To hold that the heads of the various county departments had the authority to set salaries of their

11

employees not prescribed by statute, unless clearly exorbitant, would be to seriously compound the problems faced by the Commissioners in adopting a balanced budget."

In <u>Johnson</u>, <u>supra,</u> the court rejected Plaintiffs' claims that they were entitled to monetary overtime compensation as promised by the sheriff. Both the Tenth Circuit and the Colorado Court of Appeals have rejected Colorado public employees' claims seeking compensation under similar circumstances, holding that public employees have no enforceable right to certain salaries or benefits if the governing entity has not taken legislative action to adopt such salaries or benefits. <u>See, e.g.</u>, <u>Schulz v. City of Longmont</u>, 465 F.3d 433 (10th Cir. 2006); <u>Keeling v. City of Grand Junction</u>, 689 P.2d at 680-81. In <u>Schulz</u>, city police and firefighters brought breach of contract and promissory estoppel claims against the city, alleging that they were entitled to annual step increases which were rescinded when the City Council adopted a budget containing a wage freeze. <u>Schulz</u>, 465 F.3d at 433. The Tenth Circuit rejected plaintiffs' argument that they reasonably relied on city employees' promises of pay increases and found that plaintiffs had no legally cognizable expectation of receiving salary increases. <u>Id</u>. at 441. In <u>Keeling</u>, the Colorado Court of Appeals rejected police and firefighters' claims that they were entitled to payments under an educational incentive pay program that the City Council had replaced with a different pay plan. <u>Keeling</u>, 689 P.2d at 680-81. These cases establish that Colorado government employees have no legitimate claim for wages unless the governing entity, here the BCC, has adopted an annual budget sufficient to pay those wages.

Even after limited discovery in this case, Plaintiffs' Complaint fails to allege that the BCC increased the Sheriff's budget for salaries and wages in an amount sufficient to fund the Salary Schedules in any relevant year. Instead, Plaintiffs allege that, even though the BCC never

reviewed the Salary Schedules, the BCC somehow approved sufficient funds based on the factual allegation that the BCC did not prohibit the Sheriff from transferring funds within his budget from unspecified "other activities" to pay for salaries. Compl. ¶ 28. This allegation is insufficient. The Sheriff's budget is an operational budget for a law enforcement agency and is subject to public scrutiny. Noticeably missing is any allegation that the Sheriff's approved budget contained excess funds in "other activities" or expenditure categories that could be cut and transferred to salaries.

In addition to paying salaries, the Sheriff must pay to feed and house inmates, purchase and maintain vehicles, operate facilities, run law enforcement programs, etc. As a matter of common sense and general budgeting principles, the Sheriff cannot transfer millions of dollars from "other activities" to salaries without sacrificing his ability to pay necessary operating expenses and without adversely impacting law enforcement operations. Even after deposing the Sheriff, Plaintiffs have not alleged that the Sheriff understood that he could make such transfers, had a business practice of making such transfers, intended to make such transfers, or actually transferred the funds needed to implement the Salary Schedules. It is completely speculative to imply, without any factual support, that the BCC actually approved millions of dollars to fund the Salary Schedules because the BCC allegedly allowed the Sheriff to transfer money within his budget. Plaintiffs' factual allegations fall far short of establishing that the BCC approved budgetary funding for the Salary Schedules, as required by Colorado law. Therefore, Plaintiffs have failed to state a plausible claim that Defendants violated the FLSA by failing to pay wages in accordance with the Salary Schedules.

## IV.   CONCLUSION

Plaintiffs seek to retroactively implement a taxpayer funded multi-million dollar salary system that was never approved or funded by the Board of County Commissioners. Plaintiffs' Complaint lacks sufficient facts to establish any lawful promise to pay them the wage rates set forth in the Salary Schedules. Moreover, Plaintiffs' conduct in accepting paychecks for three years without protest establishes that the only agreement as to Plaintiffs' regular rate was the agreement to be paid at the rate that Plaintiffs actually received in their paychecks. Plaintiffs have not stated a valid FLSA claim, and therefore, Plaintiffs' Complaint should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6).

Respectfully submitted this 15th day of July, 2013.

JEFFERSON COUNTY ATTORNEY
ELLEN G. WAKEMAN


*/s/ Patricia W. Gilbert*
_____

Patricia W. Gilbert
Assistant County Attorney
100 Jefferson County Parkway, Suite 5500
Golden, CO 80419
Telephone: 303-271-8968
Email: pgilbert@co.jefferson.co.us

## CERTIFICATE OF SERVICE

      I hereby certify that a true and correct copy of the foregoing DEFENDANT'S MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(b)(6) was filed via the US District Court ECF Filing System this 15th day of July, 2013, which will send a true and correct copy to the following:

Donald C. Sisson, Esq.
Reid J. Elkus, Esq.
Elkus Sisson & Rosenstein P.C.
501 S. Cherry St., Ste. 920
Denver, CO 80246
Email: dsisson@elkusandsisson.com
Email: relkus@elkusandsisson.com

Todd J. McNamara, Esq.
Mathew S. Schecter, Esq.
McNamara Roseman & Kazmierski LLP
1640 East 18th Avenue
Denver, CO 80218
Email: mss@18thavelaw.com
Email: relkus@elkusandsisson.com

                                              */s/ Briana McCarten*
                                              Briana McCarten, Paralegal