IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Senior Judge Wiley Y. Daniel**

Civil Action No.   12-cv-03362-WYD-MJW

BRANDON ALBERS, et al.,

    Plaintiffs,

v.

THE BOARD OF COUNTY COMMISSIONERS OF JEFFERSON COUNTY, COLORADO, and TED MINK, in his official capacity as Sheriff of Jefferson County, Colorado,

    Defendants.

---

**ORDER ON DEFENDANTS' MOTION TO DISMISS**

---

I.    <u>INTRODUCTION</u>

    This matter is before the Court on Defendants' Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6) filed on July 15, 2013.  A response to the motion was filed on August 19, 2013, and a reply was filed on September 9, 2013.  Thus, the motion is fully briefed.

II.    <u>FACTUAL BACKGROUND</u>

    This is a collective action claiming that Defendants violated the overtime provision of the Fair Labor Standards Act ["FLSA"].  Plaintiffs are current and former employees of the Jefferson County Sheriff's Office ["Sheriff's Office"] who allege that they are entitled to unpaid wages from Defendants for overtime work and to liquidated damages.  (Third Am. Compl. ¶ 1.)  Plaintiffs assert that they are entitled to unpaid

wages for work which they performed and for which they did not receive the compensation that was promised to them by Sheriff Ted Mink and the Sheriff's Office. (*Id.* ¶ 2.) The alleged class for this collective action is all non-exempt employees of the Sheriff's Office. (*Id.* ¶ 10.)

The Sheriff is an elected Jefferson County official who provides law enforcement services for Jefferson County. The Sheriff's Office has approximately 800 employees. (Third Am. Compl. ¶ 18). Jefferson County is a governmental entity governed by a three-member board of county commissioners. (*Id.* ¶ 6.)

The Complaint alleges that "Sheriff Mink is responsible for setting salaries and wages of the employees, sworn and civilian, of the Jefferson County Sheriff's Department." (Third Am. Compl. ¶ 21.) Further, it alleges that "Sheriff Mink has the authority to set the salaries and wages of deputies, subject to the approval of the Defendant" Board of County Commissioners of Jefferson County, Colorado ["BCC"], and that "[s]uch authority is also expressly set forth in a policy and procedure manual which is disseminated to all employees of the Jefferson County Sheriff's Department. (*Id.* ¶¶ 21-22.) Plaintiffs also allege that "Sheriff Mink sets forth the salaries and wages for his employees in the form of a document entitled 'Jefferson County Sheriff's Office Salary Schedule' (hereinafter 'Salary Schedule') which is posted at the beginning of each year on the Board for constant and continuous viewing" and is "published electronically such that it is available each day throughout the year by all employees." (*Id.* ¶ 24.) Plaintiffs allege that when they "were being recruited by the Sheriff, and during the academy, the pay schedules as set forth in **Exhibit 2** were provided to

prospective deputies by the Sheriff and others acting at his direction." (*Id.*) (emphasis in original).

It is further alleged that the County's budget, including the Sheriff Department's budget, is adopted by BCC resolution before the budget year. (Third Am. Compl. ¶ 23.) Plaintiffs assert that BCC "did not review, much less approve or deny, the specific salary schedules attached in Exhibit 2 prior to issuing the 2010, 2011 and 2012 budgets." (*Id.* ¶ 25.) "The annual budgets in 2010, 2011, and 2012 that were adopted by the BCC do not contain detail setting forth the salaries of county employees on an individual basis or even by position." (*Id.* ¶ 26.) However, it is alleged that "[b]etween the General Fund and the Patrol Fund, the BCC approved sufficient funding to pay Plaintiffs in accordance with the salary schedules." (*Id.*)[1]

Plaintiffs claim that they were not compensated in accordance with the representations made by Sheriff Mink for the years 2010, 2011 and 2012. "In other words, the salary or hourly rate reflected on the Salary Schedule is not the amount that Plaintiffs were paid for the years 2010, 2011 and 2012." (Third Am. Compl. ¶ 31.) It is further alleged by Plaintiffs that they "relied on Sheriff Mink's published schedule of salaries" and on his "representations concerning their salary and hourly rate for each calendar year." (*Id.* ¶¶ 32, 34.) In fact, Plaintiffs allege that they either accepted or continued their employment in reliance on the salary schedules for 2010, 2011 and

---

[1] According to the complaint, "Sheriff Mink had the authority to use some or all of the funds appropriated by the BCC into the Sheriff's General Fund or the Patrol Fund to pay Plaintiff's salaries", and that "[a]t no time relevant hereto did the BCC prohibit Sheriff Mink from using such appropriated funds to pay Plaintiffs in accordance with the salary schedules." (*Id.* ¶ 28.) Moreover, "the BCC, as part of the budgets at issue, adopted policies permitting the Sheriff to transfer funds from other activities to pay for salaries." (*Id.*)

2012.  (*Id.* ¶ 32.)  Plaintiffs' reliance is justified, according to the complaint, "based on the fact that Sheriff Mink set forth and continued to publish the schedule of salaries for 2010, 2011 and 2012 *after* the annual budget was approved."  (*Id.* ¶ 33) (emphasis in original.)

The complaint alleges upon information and belief that "Sheriff Mink did not revise or modify the Salary Schedules for 2010, 2011, and 2012 to reflect the salary or hourly rate that Plaintiffs' actually received, nor did he publish any such modifications." (Third Am. Compl. ¶ 35.)  While there is no allegation that the BCC approved the Salary Schedules, it is alleged that "[p]rior to 2012, Plaintiffs were never informed that the salary schedules had not been approved."  (*Id.*)[2]

Defendants argue in their motion that Plaintiffs' complaint fails to state a plausible FLSA claim for three independent reasons.  First, they argue that Plaintiffs have failed to allege facts sufficient to establish that their regular rates of pay were not rates they were actually paid, but instead the rates set forth in the Salary Schedules.  Second, Defendants contend that any alleged agreement or promise to pay the wages set forth in the Salary Schedules is unenforceable because, according to Plaintiffs' allegations, the BCC did not approve the Salary Schedules as required by Colo. Rev. Stat. § 30-2-206(1).  Finally, it is argued that any alleged promise to pay is unenforceable because

---

[2] Plaintiffs also allege that "[t]he budget approved by the BCC does not set forth the specific salaries for employees, but rather, an overall budget for such salaries."  (*Id.* ¶ 29.)  "Viewing the budget, it would be difficult, if not impossible, for Plaintiffs to ascertain that the published salary schedules were not approved by the BCC."  (*Id.* ¶ 30.)  "While the salary schedules for 2011 and 2012 contain 'disclosure' language that the schedules are subject to BCC approval, the salary schedule for 2010 contained no such disclosure until at-least mid-2010, approximately six months after the schedules were first posted."  (*Id.*)

the facts alleged, even if true, do not establish that the BCC approved budgetary funding to implement the Salary Schedules as required by Colorado law. Plaintiffs have not alleged that the BCC increased the Sheriff's budget for salaries in an amount sufficient to fund the Salary Schedules in any year.

Defendants argue that Plaintiffs seek millions of dollars of back pay on behalf of themselves and as representatives of others similarly situated current and former employees of the Sheriff's Office based on their silent reliance on a document posted annually entitled "Salary Schedules". That document, however, for the past two and a half years states at the top of each page "Implementation continent on budgetary funding". Defendants also contend out that the Salary Schedules reflect pay increases for most positions and would require millions of taxpayer dollars annually to implement.

III.   ANALYSIS

   A.   Standard of Review

In reviewing a motion filed under that Rule 12(b)(6), the court must "accept all well-pleaded facts as true and view them in the light most favorable to the plaintiff." *Jordan-Arapahoe, LLP v. Bd. of County Comm'rs of Cnty. of Arapahoe*, 633 F.3d 1022, 1025 (10th Cir. 2011). To survive a motion to dismiss under Rule 12(b)(6), "a plaintiff must allege that 'enough factual matter, taken as true, [makes] his claim for relief ... plausible on its face.'" *Id.* (quotation and internal quotation marks omitted). "A claim has facial plausibility when the [pleaded] factual content [ ] allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1940 (2009)).

A plaintiff "must include enough facts to 'nudge[] his claims across the line from conceivable to plausible.'" *Dennis v. Watco Cos., Inc.*, 631 F.3d 1303, 1305 (10th Cir. 2011) (quotation omitted). Conclusory allegations are not sufficient to survive a motion to dismiss. *Gallagher v. Shelton*, 587 F.3d 1063, 1068 (10th Cir. 2009).

I note that Plaintiffs attached deposition testimony to their response to the motion to dismiss. The Tenth Circuit has stated that "if matters outside the pleading are presented to and not excluded by the court, [a Rule 12(b)(6) motion] shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such motion by Rule 56." *David v. City & Cnty. of Denver,* 101 F.3d 1344, 1352 (10th Cir. 1996). Courts have broad discretion in determining whether or not to accept materials beyond the pleadings. *Lowe v. Town of Fairland,* 143 F.3d 1378, 1381 (10th Cir. 1998). Here, I have not considered and do not accept the deposition testimony as part of the motion to dismiss as I believe it is not relevant to my ruling; thus, conversion of the motion to a summary judgment motion is not required.

B.   <u>The Merits of Defendants' Motion</u>

I first address Defendants' argument that Plaintiffs have not alleged sufficient facts to establish that their regular rates of pay were the rates set forth in the Salary Schedules.[3] As noted previously, Plaintiffs bring claims in this representative action to

---

[3] While Plaintiffs argue that this argument was waived because it was not raised in the prior motion to dismiss, I disagree. The first motion to dismiss was denied as moot based on the filing of the Third Amended Complaint. (Minute Order of July 2, 2013, ECF No. 36.) The denial of this motion did not preclude new arguments based on the defense of failure to state a claim. *See Lawton v. Peroulis*, Civ. Act. No. 06-cv-01125-REB-MEH, 2007 WL 1879973, *2 (D. Colo. June 27, 2007) (the defense of failure to state a claim is "expressly preserved against waiver"). Further, Fed. R. Civ. P. 12(g)(2) applies to

recover unpaid overtime due on the wages which were allegedly promised to them in Salary Schedules repeatedly posted by the Jefferson County Sheriff. The regular rate of pay must be determined because overtime hours are compensated "at a rate not less than one and one-half times the regular rate at which [the employee] is employed." 29 U.S.C. § 207(a)(1). The "regular rate" includes "all remuneration for employment paid to, or on behalf of the employee. . . ." 29 U.S.C. § 207(e). Thus, "[t]he regular rate is 'the hourly rate actually paid for the normal, non-overtime workweek.'" *Chavez v. City of Albuquerque*, 630 F.3d 1300, 1304-5 (10th Cir. 2011) (quoting *Walling v. Helmerich & Payne*, 323 U.S. 37, 40 (1944)).

In this case, Plaintiffs, who are at-will employees, were paid wages and overtime at the rates set forth in their pay statements ("Actual Wage Rate"). Although Plaintiffs argue that they were promised the rates set forth in the Salary Schedule ("Salary Schedule Rate"), they were never paid those rates. Consequently, under the above definition of regular rate, Plaintiffs' Actual Wage Rate would appear to be their regular rate, not the Salary Schedule Rate, and Plaintiffs' claims would be subject to dismissal.

Plaintiffs argue, however, that courts have allowed overtime claims in cases where employees allege that they were entitled to a certain regular rate based on an alleged mutual agreement. Plaintiffs rely heavily on *Chavez*, but I find it distinguishable. The *Chavez* decision involved collective bargaining agreements that set forth a base hourly rate for all employees plus in certain instances various types of add-on pay that

---

"objections or defenses," not individual arguments. Plaintiffs have not cited any authority that holds a party waives a specific argument not made in a prior motion to dismiss. The cited cases involve Defendants' failure to assert the defense of insufficient service of process, which, unlike failure to state a claim, is specifically waived under Rule 12(h)(1) if not raised in the initial responsive pleading.

were made as lump sums on a bi-weekly basis. 630 F.3d at 1305. The regular rate of pay was determined by what the employees were paid according to those collective bargaining agreements. Indeed, the Tenth Circuit made clear in *Chavez* that the regular rate is the race *actually paid*, which "may include more than the contractually-designated hourly rate *if the employee is, in fact, paid more than that hourly wage.*" *Id.* at 1305-06 (emphasis added). *Chavez* does not support Plaintiffs' argument that the regular rate can be determined by an alleged promise to pay a rate that was never actually paid to the employees, even if the employees relied on that promise.[4]

Plaintiffs also rely on *Gallucio v. Weiser Sec. Servs., Inc.*, No. 07-cv-02309, 2008 WL 4643324 (M.D. Fla. Oct. 20, 2008). While this unpublished and non-binding case supports Plaintiffs' argument that the regular rate of pay may be established by a promise to pay a higher rate, I find it doubtful based on the *Chavez* decision that the Tenth Circuit would adopt this reasoning, particularly in the absence of an alleged mutual agreement. Here, Plaintiffs allege a promise to pay and reliance on the promise, not a mutual agreement. Further, Plaintiffs have not cited, and I have not found, any case where a court has recognized a FLSA claim based on the posting of salary schedules or similar documents.

Moreover, even if there was an enforceable agreement to pay the Salary Schedule Rate, courts have held that where the plaintiff continues to work despite

---

[4] The other Tenth Circuit case relied on by Plaintiffs, *Brown v. City of Oklahoma City, Okl.*, No. 93-6389, 1994 WL 721389 (10th Cir. Dec. 23, 1994), is inapposite. It did not involve a dispute about the regular rate of pay, but about sleep and meal times. Sleep and meals are governed by a regulation requiring that where an employee is required to be on duty for 24 hours or more, sleep time and lunch hours be counted as hours worked unless there is an express or implied agreement otherwise.

-8-

receiving the promised higher pay, the agreement for that rate of pay is modified by his or her conduct.  Relying on *Williams v. Jacksonville Terminal Co.*, 315 U.S. 386 (1942), the court in *Anderson v. Northeast Otolaryngology, P.C.*, No. 106CV-0037, 2006 WL 3487333 (S.D. Ind. Dec. 1, 2006), noted that the parties' actual practices established the terms of the agreement.  *Id.* at *3.  Thus, the *Anderson* court found that even if it assumed "a once-enforceable oral promise" to pay a higher rate, the fact that the plaintiff continued to work for more than a year after the alleged breach of the oral promise "imply a modification of any such contract by conduct."  *Id.*

Other cases have held to similar effect.  The Tenth Circuit has stated that "[a]n employee's continuous employment is evidence of an implied agreement with the pay system of the employer."  *Holb v. City of Beaufort*, Nos. 91-2086, 92-1427, 1993 WL 219806, *5 (10th Cir. June 22, 1993).  It further noted that while the court "will not approve employer actions that place the employee in a situation of economic duress," it also would not "allow employees merely to grumble about the compensation scheme and then later spring a surprise attack on the employer who has tried to comply with the options that the FLSA provides."  *Id.*  Similarly, in *Johnson v. City of Columbia, S.C.*, 949 F.2d 127 (4th Cir. 1991), the court found in a case alleging an express agreement that an analogy to implied agreement cases was appropriate.  *Id.* at 131.  It then held that "[t]hose cases ultimately turn on whether the employee protested the employer's actions. . . . if the employee did not protest and continued to work and receive paychecks, the courts have found that an implied agreement did arise between the parties."  *Id.*

Here, the Plaintiffs continued to work despite not being paid the higher rates in the Salary Schedules, and there are no allegations that they protested or complained about their rate of pay. Further, like Indiana law in *Anderson*, Colorado law recognizes modification of a contract based on the conduct of the parties. *See George v. Ute Water Conservancy Dist.*, 950 P.2d 1195, 1198 (Colo. Ct. App. 1997). Accordingly, under the reasoning of *Anderson*, *Williams* and the other authority cited above, I find that Plaintiffs' conduct in continuing to work at a lower rate than in the Salary Schedules without protest modified any promise or agreement to pay the Salary Schedule Rate, and they agreed to the Actual Wage Rate.

Based on the foregoing, I find that Plaintiffs have failed to state a plausible claim that Defendants violated the FLSA's overtime provision. I acknowledge Plaintiffs' argument that the "conduct of the parties" is disputed and that the matter should be resolved on summary judgment. However, they provide no description of what conduct is in dispute. I find that the relevant conduct is not disputed as it is based on the allegations in the Third Amended Complaint. Since I have decided that Plaintiffs' regular rate of pay is the Actual Wage Rate they were paid, Plaintiffs' FLSA claim based on the Salary Schedule Rates is legally insufficient and must be dismissed on this ground.[5] Accordingly, I need not consider the other arguments made by Defendants in support of their motion.

---

[5] This ruling is not based on a waiver of an employee's right to minimum wage and overtime pay; thus, Plaintiffs' argument that such a right is nonwaivable is inapposite.

I also deny the request to amend the complaint made in the response to the motion to dismiss. The Tenth Circuit has held it insufficient where the plaintiffs made a bare request in their response to a motion "'that leave be given to the Plaintiffs to amend their Complaint." *Calderon v. Kansas Dep't of Social and Rehabilitation Servs.*, 181 F.3d 1180, 1186 (10th Cir. 1999)); *see also Shah v. Helen Hayes Hosp.*, 252 Fed. App'x 364, (2nd Cir. 2007) ("A party may not use his or her opposition to a dispositive motion as a means to amend the complaint.") (unpublished) (citing *Wright v. Ernst & Young LLP*, 152 F.3d 169, 178 (2d Cir.1998) (collecting cases)).

III. CONCLUSION

Based upon the foregoing, it is

ORDERED that Defendants' Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6) (ECF No. 37 )is **GRANTED** and this case is **DISMISSED**.

Dated: January 13, 2014

BY THE COURT:

s/ Wiley Y. Daniel
Wiley Y. Daniel
Senior United States District Judge